Appendix

Tab 1

A-2

NOT FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## No. 88-5764

## UNITED STATES OF AMERICA
## & UNITED STATES POSTAL SERVICE

### v.

## CEN-CARD AGENCY/C.C.A.C.
### A New Jersey Corporation,
### SANTO RIGATUSO a/k/a BOB HARRIS, an individual
### and DIANA RIGATUSO, an individual

Cen-Card Agency/C.C.A.C., Inc.
Santo Rigatuso a/k/a Bob Harris
and Diana Rigatuso

Appellants

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 88-3919
(Honorable H. Lee Sarokin)

Submitted Under Third Circuit Rule 12(6)
March 17, 1989

Before:  MANSMANN, GREENBERG and SCIRICA, Circuit Judges

(Filed MAR 23 1989)

## MEMORANDUM OPINION

SCIRICA, Circuit Judge.

Defendants Cen-Card Agency/C.C.A.C., Santo Rigatuso,
the owner of Cen-Card Agency, and Diana Rigatuso, the director of

A-2

Cen-Card Agency (collectively "Cen-Card"), appeal from an order of the district court granting a preliminary injunction. The injunction prohibited Cen-Card from making false representations concerning the issuance of any credit card, restrained Cen-Card from transferring any monies received from their credit card business, required that Cen-Card notify purchasers of the credit card that they were entitled to a refund, and ordered that any mail sent to Cen-Card as a result of their credit card business would be returned to its sender. For the reasons stated, we will affirm the order of the district court.

I.

In July 1988, Cen-Card solicited approximately seven million persons, purporting to offer credit cards with an initial charge limit of $2,850, without any credit investigation. The mailed solicitations stated in pertinent part:

> YOUR CHARGE LIMIT HAS BEEN APPROVED FOR $2850. YOUR CARDS WILL BE PROCESSED WITHIN 48 HOURS OF RECEIPT OF THE FORM BELOW BY CEN-CARD AGENCY C.C.A.C..
>
> WE CAN HANDLE THOUSANDS OF TRANSACTIONS PER YEAR WITH VISA, MASTER CARD, CEN-GOLD CARD, CHARGE CARD U.S.A., ETC.
>
> YOUR OPENING COMBINED CHARGE LIMIT IS $2850. AND THIS WILL INCREASE TO $5000 AS YOU ESTABLISH A GOOD PAYING HISTORY. FOR YOUR CEN-GOLD CARD, CHARGE CARD U.S.A., ETC., PLEASE SIGN THE FORM BELOW AND RETURN WITH $39.95 1 YR PROCESSING FEE OR $49.95 LIFE TIME.
>
> YOUR CARDS ARE READY FOR ISSUE BY COMPUTER AND WILL BE SENT TO YOU WITHIN 5 DAYS OR LESS. PERSONAL CHECKS ALLOW APPROX. 21 DAYS. MONEY ORDERS, CASH AND BANK CHECKS ARE HANDLED AS CASH, AND SHIPPED OUT IMMED.
>
> YOUR CARDS WILL BE HELD FOR PAYMENT A MAXIMUM OF TEN DAYS ONLY.

A-2

FOR MORE INFORMATION CALL 1-900-909-3000
$2.00 TOLL CHARGE 1ST MINUTE 35 CENTS EACH ADDL MINUTE.

\* \* \* \* \*

C.C.A.C. GUARS THAT YOU WILL RECEIVE A MIN OF 2 CARDS
ABOVE TO START THAT WILL BE GOOD IN CATALOGS AND
BROCHURES AND FUTURE CONDITIONAL CASH WITHDRAWALS UP TO
$1250 INTEREST FREE BASED ON PURCHASES AND A MIN CHARGE
LIMIT OF $2850 WITH A CHANCE AT OTHER MAJOR CARDS
REGARDLESS OF YOUR PAST CREDIT HISTORY.

App. at 57a. Some of the solicitation letters contained a slight
variation in the language used. App. at 31a, 32a and 56a. If a
prospective buyer called the telephone number provided, they
received the following pre-recorded message:

Hello. Thank-you so much for calling. Americans use
charge cards for everything; gasoline purchases, food,
trips, cash advances and the list goes on. Usually you
fill out a time consuming application then keep your
fingers crossed and wait for the final decision. Even
people with good credit get turned down. Now there's a
brand new way to acquire credit without any credit
investigation whatsoever. That's right, no lengthy
applications to fill out, no waiting to see if you're
approved, no waiting to use your cards, and absolutely
no one is turned down. We act like an insurance
company. We gamble but still pay. If you don't, we
will. But based on national computer statistics we'll
give you a second chance regardless of your past
credit. Our cards are good on purchases within our
catalogs and brochures which contain thousands of
items. All offered at savings of up to 90% off. In
addition, your cards are also good on future cash
withdrawals. Cash withdrawals can amount to as much as
$1200 and we can also assist you in acquiring a VISA or
MASTERCARD. A pre-approval form is included with your
package. Simply send in the small service fee now and
your cards, catalogs and everything else will be on
their way. It's that simple. You'll not only receive
major savings but you'll get instant credit as well.
You'll even be able to use us as a credit reference to
establish or re-establish your credit. And once you're
a member it will entitle you to future additional
benefits and many new items. For additional
information be sure to call this number tomorrow.
That's 1-900-909-3000. Thank you and have a wonderful
new and prosperous day.

3

App. at 50a.

Cen-Card received and processed approximately 28,000 responses and orders to their solicitation. The responses and orders were sent to an address in Parsippany, New Jersey. The mail was retrieved by Cen-Card's New Jersey data processing contractor and forwarded to Cen-Card at a post office box in Maryland.

Customers of the Cen-Card solicitation lodged complaints with various consumer agencies, stating that they expected to receive a Visa or Mastercard. They instead received either a cardboard card entitling them to purchase from an enclosed catalog of costume jewelry and reconditioned appliances and electronic merchandise, or they never heard from Cen-Card after they submitted their fee. App. at 111a to 115a.

On August 16, 1988, the Postal Service served a "Notice of Withholding Mail" on Cen-Card. App. at 29a. The notice advised Cen-Card that their mail would be withheld because the postal inspector had reason to believe that "(1) you are using fictitious, false, or assumed name, title, or address in violating Title 18, U.S. Code, Section 1341 (Mail Fraud), and (2) that letters sent in the mail are addressed to places not the residence or regular business address of the person for whom they are intended to enable that person to escape identification." App. at 29a. As a result of this notice, an "Interim Mail Detention Agreement" was negotiated between the Postal Service

4

A-2

and Cen-Card.  App. at 172a.  The Postal Service and Cen-Card did not, however, reach any final agreement.

By means of summons and verified complaint, the Postal Service obtained a temporary restraining order which allowed for detention of Cen-Card's mail and prohibited Cen-Card from soliciting, by mail or phone, any credit card business.  App. at 18a.  An order to show cause was also entered, requiring that Cen-Card show cause why their credit card solicitation business should not be restrained.  App. at 16a.

On September 23, 1988, the district court held a hearing on the Postal Service's application for a preliminary injunction.  App. at 189a.  The court entered an order which stated that since Cen-Card engaged in acts which violated 18 U.S.C. § 1341 (1984), mail fraud, and 18 U.S.C. § 1343 (1984), wire fraud, all mail sent to Cen-Card would receive a stamp, stating that it was being returned by order of the court because the material contained false or fraudulent representations.  App. at 230a.  The court granted the preliminary injunction, stating that until a final determination was entered in the action, Cen-Card would be:  (1) prohibited from making false or fraudulent representations concerning the issuance of any credit card, (2) prohibited from accepting, disposing, or transferring any monies received from their credit card scheme, and (3) ordered to notify all Cen-Card customers of their right to a refund.  App. at 231a. Cen-Card was also required to produce materials relating to their credit card business.  App. at 232a.

5

A-2

Cen-Card filed a timely notice of appeal to the
imposition of the preliminary injunction.  App. at 1a.  Cen-Card
contends that the district court incorrectly determined that the
practices of Cen-Card were false and misleading, and improperly
granted the preliminary injunction.  Cen-Card also claims that
the fraud injunction statute, 18 U.S.C. § 1345 (West Supp.
1988), is unconstitutional due to vagueness.  We have
jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) (West Supp.
1988).  Our scope of review is limited:  the district court's
grant of the preliminary injunction will be reversed only if the
court abused its discretion, committed an obvious error in
applying the law, or made a serious mistake in considering the
proof.  Loretangeli v. Critelli, 853 F.2d 186, 193 (3d Cir.
1988).

II.

In order to obtain a preliminary injunction, the moving
party must generally show (1) a reasonable probability of
eventual success in the litigation, and (2) that they will be
irreparably injured if the relief is not granted.  Delaware River
Port Auth. v. Transamerican Trailer Transp., Inc., 501 F.2d 917,
919-20 (3d Cir. 1974).  Moreover, while the burden rests upon the
moving party to make these requisite showings, the district court
"should take into account, when they are relevant, (3) the
possibility of harm to other interested persons from the grant or
denial of the injunction, and (4) the public interest."  Id.; see
also Loretangeli, 853 F.2d at 193.

6

A-2

## A.

We first consider whether the Postal Service has shown a reasonable probability of success on the merits. The district court found that the Postal Service established a likelihood of success on the merits because the Postal Service presented uncontroverted evidence of Cen-Card's solicitation. The court stated that the solicitation contained no information indicating that the credit cards were only good on purchases from Cen-Card's catalogs. App. at 227a. The court also stated that average consumers believed that recognized and established credit cards were being offered. App. at 228a. Our consideration of this issue requires a review of the factual background of the case and the legal theory upon which the Postal Service relies. Delaware River, 501 F.2d at 920.

The complaint requested injunctive relief under 39 U.S.C. § 3007 and 18 U.S.C. § 1345. App. at 6a. The district court's order appears to have granted the preliminary injunction under the latter statute. App. at 230a. However, we will examine the propriety of the preliminary injunction under each statute.

Under 39 U.S.C. § 3007,[1] the Postal Service need not

_____

1.  39 U.S.C. § 3007, titled "Detention of mail for temporary periods" states in part:

(a)  In preparation for or during the pendency of proceedings under sections 3005 and 3006 of this title, the United States district court in the district in which the defendant receives his mail shall, upon application therefor by the Postal and upon a showing of probable cause to believe either
(continued...)

7

A-2

show a likelihood of success on the merits, but rather, has the
burden of establishing probable cause for the detention of mail.
39 U.S.C. § 3007(a).[2]  We find that the Postal Service did
establish probable cause with the submission of an affidavit of
Postal Inspector Robert R. Blackburn.  App. at 19a.  The
affidavit contains a complete factual background explaining Cen-
Card's solicitation practices, as well as prior administrative
action taken against Santo Rigatuso and C.C.A.C.  App. at 25a.
Exhibits to the affidavit show copies of the solicitation
letters, a transcript of the phone message, copies of the
catalogs offered by Cen-Card, copies of consumer complaints, and
documentation of the prior administrative action.  App. at 28a to
128a.

---

1.  (...continued)
section is being violated, enter a temporary restraining order
and preliminary injunction pursuant to rule 65 of the Federal
Rules of Civil Procedure directing the detention of the
defendant's incoming mail by the postmaster pending the
conclusion of the statutory proceedings and any appeal therefrom
. . .

Section 3005, referred to above, allows the Postal Service to
take action against persons who obtain money through the mail by
means of false representations.  Section 3006, also referred to,
allowing the Postal Service to take action when a person obtains
money through the mail for obscene materials, is inapplicable to
this case.

2.  To obtain the issuance of an injunction under 39 U.S.C. §
3007, the government need only meet the probable cause showing of
39 U.S.C. § 3005.  The common law standards for the imposition of
a preliminary injunction, a likelihood of success on the merits
and a showing of irreparable harm, do not apply to injunctions
under § 3007.  United States v. Beamish, 466 F.2d 804, 806 (3d
Cir. 1972).

A-2

The affidavit and exhibits established probable cause
for a preliminary injunction under 39 U.S.C. § 3007(a).  See
United States Postal Service v. Beamish, 466 F.2d 804, 806 (3d
Cir. 1972) (postal service's burden of demonstrating probable
cause was met by affidavit of service's expert developing
ultimate conclusion, uncontradicted by defendant, that
advertising claims extolling defendant's products were grossly
false and irrational); cf. United States Postal Service v.
Stimpson, 515 F. Supp. 1149, 1150 (N.D. Fla. 1981) (to establish
probable cause, the postal service must show facts and
circumstances based upon reasonably trustworthy information,
sufficient to justify a person of reasonable caution believing
that an act has occurred or is about to occur).  In Stimpson, the
Postal Service failed to establish probable cause of false
representation with copies of the defendant's advertisement and
brochure, because these alone were insufficient to show that the
defendant's system did not deliver the promised reward.  Id. at
1151.

By contrast, the Postal Service here presented evidence
of Cen-Card's solicitation, which appeared to indicate that upon
payment the recipient would receive a Visa, Mastercard, or other
nationally recognized credit card.  The Postal Service also
showed that the recipient received no such card, but rather a
card allowing the customer to only purchase items on credit from
Cen-Card's catalogs.  We hold that this established probable

cause for the district court to enter a preliminary injunction under § 3007(a).

As stated, the complaint alternatively requested injunctive relief under 18 U.S.C. § 1345[3]. Section 1345 allows the district court to enter an injunction against any party committing a violation under chapter 63 of title 18. The complaint alleged that Cen-Card's activities violated 18 U.S.C. § 1341, prohibiting mail fraud, and 18 U.S.C. § 1343, prohibiting wire fraud. We look to whether the Postal Service established a likelihood of success on these provisions as well.[4]

The essential elements of mail fraud under § 1341 are the existence of a scheme to defraud, use of the mails in furtherance of the fraudulent scheme, and culpable participation

---

3. 18 U.S.C. § 1345 states in pertinent part:

Whenever it shall appear that any person is engaged or about to engage in any act which constitutes or will constitute a violation of this chapter, the Attorney General may initiate a civil proceeding in a district court of the United States to enjoin such violation. The court . . . may, at any time before final determination, enter such a restraining order or prohibition, or take other such action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought . . .

4. It has been suggested that since the legislative history of 18 U.S.C. § 1345 indicates that Congress intended to broaden the remedy available in 39 U.S.C. § 3007, if the stringent common law injunction requirements are not applicable to § 3007, Congress certainly did not intend them to apply to § 1345. United States v. Belden, No. 86-CV-659 (N.D.N.Y. Nov. 23, 1987) (available on Westlaw, 1987 WL 20386). We decline to address whether the Postal Service may obtain a preliminary injunction pursuant to § 1345 under a lesser standard, because they have met the common law requirements for the issuance of a preliminary injunction in this case.

by the defendant.  <u>United States v. Pearlstein</u>, 576 F.2d 531, 534 (3d Cir. 1978).  To support a conviction for mail fraud, the government's evidence must show that the defendant agreed to participate in a scheme to defraud and that he caused mails to be used in furtherance of the scheme.  <u>United States v. Sturm</u>, 671 F.2d 749, 751 (3d Cir.) (citing <u>United States v. Pereira</u>, 347 U.S. 1 (1954)), <u>cert. denied</u>, 459 U.S. 842 (1982).  The elements of wire fraud under § 1343 are the existence of a scheme to defraud, and the use of interstate communications in furtherance of the scheme.  <u>United States v. Gordon</u>, 780 F.2d 1165, 1171 (5th Cir. 1986).  The element of a "scheme to defraud" is identical under both statutes.  <u>United States v. Lemire</u>, 720 F.2d 1327, 1334-35 n.6 (D.C. Cir. 1983), <u>cert. denied</u>, 467 U.S. 1226 (1984); <u>see also United States v. Giovengo</u>, 637 F.2d 941, 944 (3d Cir. 1980), <u>cert. denied</u>, 450 U.S. 1032 (1981) (mail and wire fraud statutes are <u>in pari materia</u>, and cases construing the mail fraud statute are applicable to the wire fraud statute).

The government alleged the elements necessary to establish mail and wire fraud.  The government alleged that Cen-Card had devised their scheme to obtain money by means of false and fraudulent pretenses, that they knowingly caused their advertisements to be delivered by the mail, and that they transmitted sounds in interstate commerce by means of the telephone.  <u>See</u>, <u>e.g.</u>, <u>Gordon</u>, 780 F.2d at 1171-72.  The facts of this case, along with these allegations, are sufficient to permit the government to seek an injunction under § 1345.  These facts

A-2

and allegations, if proven, also show a reasonable likelihood of success on the merits. We therefore hold that the complaint and affidavit by postal inspector Blackburn establish a reasonable likelihood of success on the merits sufficient to grant a preliminary injunction under either basis proposed by the Postal Service.

B.

We next consider the possibility of irreparable harm to the Postal Service and other persons, as well as consideration of the public interest. <u>Delaware River</u>, 501 F.2d at 923; <u>Loretangeli</u>, 853 F.2d at 193.[5] The district court found that consumers who had already sent in their money to Cen-Card would be irreparably harmed unless Cen-Card was prohibited from transferring any monies received from their scheme and Cen-Card notified the consumers of their right to a refund. App. at 228a. We agree with this assessment.

The continued operation of Cen-Card, until a determination on the merits by the district court, would harm the integrity of the postal system. <u>Cf. United States v. Rendini</u>, 738 F.2d 530, 533 (1st Cir. 1984) (the mail fraud statute was enacted by Congress to protect the integrity of the mails by making it a crime to use them to implement fraudulent schemes of

---

5. Again, the common law requirement of irreparable harm does not apply where an injunction is sought under 39 U.S.C. § 3007. <u>Beamish</u>, 466 F.2d at 806. <u>See</u> <u>supra</u> note 2. We will, however, apply this common law requirement for an injunction to the Postal Service's request for an injunction under 18 U.S.C. § 1345. <u>But see</u> <u>supra</u> note 4.

12

A-2

any kind).  More importantly, the Cen-Card operation would cause
irreparable harm to those who had been solicited by the company.
Given the fact that 28,000 people responded to Cen-Card's offer,
a large number of people could irretrievably lose their money if
immediate action was not taken by the district court.  While the
loss of income alone does not constitute irreparable harm, Morton
v. Beyer, 822 F.2d 364, 372 (3d Cir. 1987), the preliminary
injunction did not require that Cen-Card return the money, but
only that it not transfer any monies received from their credit
card operation.  App. at 231a.  This would ensure that if the
district court made a final determination adverse to Cen-Card,
purchasers of the card would have the opportunity to recover
their credit card fee.  Moreover, since Cen-Card had solicited
seven million people with its credit card offer, the potential
for injury to an even larger number of people was substantial.
We conclude that irreparable harm to customers of Cen-Card was
established, and that freezing Cen-Card's assets as well as
advising Cen-Card customers that they had a right to a refund was
warranted under the facts of this case.

Finally, the interest of the public supports the
issuance of the preliminary injunction.  The legislative history
of 18 U.S.C. § 1345 indicates that Congress was concerned about
the possibility that innocent people would continue to be
victimized by fraudulent schemes during the often lengthy period
of time required to investigate such schemes and bring charges
against the perpetrators.  See S. Rep. No. 225, 98th Cong., 2d

13

Sess. 401-02, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3539-40 (hereinafter "Senate Report"). The Judiciary Committee sought to expand on the remedy afforded in 39 U.S.C. § 3007, because § 3007 did not restrict future mailings or schemes that did not directly involve the United States mails. Senate Report at 402. The Judiciary Committee sought broader equitable relief so that even after indictment or conviction, the perpetrators of fraudulent schemes could not continue to victimize the public. Id.

Thus, it is clear that § 1345 seeks to prevent the continued perpetration of schemes to defraud the general public. Indeed, it has been suggested that the existence of a scheme is irreparable harm per se. United States v. Belden, No. 86-CV-659 (N.D.N.Y. Nov. 23, 1987) (available on Westlaw, 1987 WL 20386) ("Indeed, it is probable that Congress considered the continued existence of a scheme to defraud as irreparable harm per se, since it is likely that the victims of such a scheme would not be able to recover money lost as a result of it.") (citing Government of the Virgin Islands v. Virgin Islands Paving Inc., 714 F.2d 283, 286 (3d Cir. 1983) ("when a statute contains, either explicitly or implicitly, a finding that violations will harm the public, the courts may grant preliminary equitable relief on a showing of a statutory violation without requiring any additional showing of irreparable harm"); Securities & Exchange Comm'n v. Management Dynamics, Inc., 515 F.2d 801, 808 (2d Cir. 1975) (same)).

14

A-2

On the basis of this legislative history, we find that the public interest in being protected from schemes to defraud is paramount, and in this case, supports the issuance of the preliminary injunction.  The Postal Service having established a likelihood of success on the merits, irreparable injury, harm to other interested parties, and the public interest, it was not an abuse of discretion for the district court to grant the preliminary injunction.

III.

Cen-Card also appeals on the basis that 18 U.S.C. § 1345 is void for vagueness.  We find this contention without merit.

We understand Cen-Card's argument to be that § 1345, the fraud injunction statute, is so vague that it violates standards of due process.  There are two criteria for evaluating a vagueness challenge under the due process clause.  <u>Trade Waste Management Ass'n, Inc. v. Hughey</u>, 780 F.2d 221, 235 (3d Cir. 1985).  First, the statute "must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'"  <u>Id.</u> (quoting <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108 (1972)).  "Second, 'if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.'"  <u>Id.</u> (quoting <u>Grayned</u>, 408 U.S. at 108).

Cen-Card maintains that ordinary individuals are required to guess at the meaning of the statute when it says

A-2

"[w]henever it shall appear that any person is engaged or is
about to engage in any act which constitutes or will constitute a
violation of this chapter . . . ."  Appellant's Brief at 38
(emphasis in original).  Cen-Card states that they are unable to
tell where the line is drawn between competitive salesmanship and
punishable fraud.  Id. at 39.  Vagueness challenges to statutes
not threatening first amendment interests are examined in light
of the facts of the case at hand; the statute may be judged on an
as-applied basis.  Maynard v. Cartwright, 108 S.Ct. 1853, 1858
(1988).

    The challenged provision cannot be read in a vacuum.
Section 1345 does not create a substantive offense, but only
provides a civil injunctive remedy for actions which may be a
violation under chapter 63 of title 18.  Possible substantive
offenses relevant to this case are mail fraud, 18 U.S.C. § 1341,
and wire fraud, 18 U.S.C. § 1343.  Several courts have held §§
1341 and 1343 constitutional in the face of vagueness
challenges.  Durland v. United States, 161 U.S. 306, 313-14
(1896) (interpreting a predecessor statute); United States v.
Conner, 752 F.2d 566, 574 (11th Cir.), cert denied, 474 U.S. 821
(1985); United States v. Bohonus, 628 F.2d 1167, 1174 (9th Cir.),
cert. denied, 447 U.S. 928 (1980).  Thus, if §§ 1341 and 1343
gave Cen-Card enough notice to know that their actions
constituted a violation of those provisions, they had enough
notice to know that their actions could be enjoined in a civil
proceeding under § 1345.

16

A-2

Furthermore, given the facts of this case, we find that Cen-Card had reason to believe that their actions might subject them to the remedies under § 1345. The past administrative actions against Cen-Card, as well as the "Notice of Withholding Mail" sent to Cen-Card, gave them ample warning that their solicitation went beyond mere competitive salesmanship and could be construed as fraud.

Cen-Card also claims that the statute provides for arbitrary and discriminatory enforcement. They argue that the district court "is vested with an unbridled and 'standardless' power to arrive at an 'appearance finding,' and then seek to justify same on the facts thereafter presented for support." Appellant's Brief at 40. We reject this argument. In evaluating the Postal Service's request for a preliminary injunction, the district court applied the common law standards for the issuance of a preliminary injunction. We have held that under these standards, the issuance of the preliminary injunction was appropriate. Moreover, the preliminary injunction is just that, preliminary. The district specifically stated that the injunction was in effect until a final determination could be made on the allegations of the Postal Service. Thus, the district court does not, as alleged, seek to justify its result on facts thereafter presented. We find that the constitutional challenge to § 1345 is without merit.

A-2

## IV.

Because we find that the district court did not abuse its discretion in granting the preliminary injunction, and we reject Cen-Card's challenge to the constitutionality of 18 U.S.C. § 1345, we will affirm the issuance of the preliminary injunction by the district court.

_____

TO THE CLERK:

Please file the foregoing opinion.

_____
Circuit Judge

DATED:

Tab 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.  06-725 (JP)** |
| | : | |
| | : | **FILED UNDER SEAL** |
| **PAYMENT PROCESSING CENTER,** | : | |
| **LLC, AND DONALD M. HELLINGER,** | : | |
| **MICHAEL WEISBERG, RANDY** | : | |
| **D. TROST, JAMI M. PEARLMAN,** | : | |
| **MICHELLE O'KEEFE QUIGLEY,** | : | |
| **RONALD HELLINGER, AND** | : | |
| **ROBERT DEBOYCE,** | : | |
| | : | |
| **Defendants.** | : | |

## AMENDED TEMPORARY RETRAINING ORDER

**AND NOW**, this 21st day of February, 2006, upon consideration of United States of

America's Ex Parte Motion for a Temporary Restraining Order and Preliminary Injunction, it is

**ORDERED** that the motion is **GRANTED.**  It is **FURTHER ORDERED** that defendants

Payment Processing Center LLC,  Donald M. Hellinger, Michael Weisberg, and Randy D. Trost,

and relief defendants Jami M. Pearlman, Michelle O'Keefe Quigley, Ronald Hellinger, and

Robert Deboyce, the financial institutions identified herein (with respect to subparagraph (v)),

and all other persons and entities in active concert or participation with the defendants who

receive actual notice of the Court's order, are hereby enjoined from:

    (i)  processing bank drafts in all instances where the purported

        authorization for the bank draft has been obtained in connection

        with outbound telemarketing;

(ii)     processing bank drafts in all instances where the return rate on

deposited bank drafts for a merchant telemarketer exceeds two (2)

percent in any one-week period;

(iii)    processing bank drafts for all merchants that are, or that have been

within the past two years, the subject of an action or inquiry by any

state or federal regulatory agency (defendants shall identify to

plaintiff all existing and prospective merchants;  plaintiff shall

inform defendants within five (5) business days whether it is aware

that a merchant is, or has been within the past two years, the

subject of an action or inquiry by any state or federal regulatory

agency;  plaintiff is not required to disclose nonpublic

investigations);

(iv)    processing bank drafts for all merchants owned by, or that employ,

or that consult with, a person who is, or who has been within the

past two years, the subject of an action or inquiry by any state or

federal regulatory agency (defendants shall identify to plaintiff all

owners, employees and consultants of all existing and prospective

merchants;  plaintiff shall inform defendants within ten (10)

business days whether it is aware that a merchants' owners,

employees or consultants is, or has been within the past two years,

the subject of an action or inquiry by any state or federal regulatory

agency;  plaintiff is not required to disclose nonpublic

investigations);

(v)    transferring, withdrawing, pledging, encumbering, disposing of, or otherwise using funds in any of the following bank accounts:

*PPC Accounts*

Wachovia Bank Account No. 2000018538232

Wachovia Bank Account No. 2000018853548

Wachovia Bank Account No. 2000018853797

Wachovia Bank Account No. 2000013369422

Wachovia Bank Account No. 2000013369448

Wachovia Bank Account No. 2000013369529

Wachovia Bank Account No. 2000018538274

Wachovia Bank Account No. 2000013369435

Commerce Bank Account No. 0366843308

*D. Hellinger Accounts*

Wachovia Bank Account No. 2000013367107

Firstrust Bank Account No. 70-1603797

*Weisberg Accounts*

PNC Bank Account No. 8400700053

PNC Bank Account No. 8995987881

PNC Bank Account No. 8610434697

*Pearlman Accounts*

Commerce Bank Account No. 0365739051

Commerce Bank Account No. 0367576766

*D. Hellinger and Pearlman Account*

National Penn Bank Account No. 215699939

*Quigley Account*

Commerce Bank Account No. 0367773447

*R. Hellinger Accounts*

Commerce Bank Account No. 0365738905

Commerce Bank Account No. 0365164011

Commerce Bank Account No. 0361941958

*DeBoyace Accounts*

Sovereign Bank Account No. 0721070116

*Quigley, DeBoyace and Pearlman Account*

Wachovia Bank Account No. 2000018538902

\*      \*      \*

(vi)    establishing any new bank accounts;

(vii)   dissipating, transferring, selling, withdrawing, pledging,

encumbering, disposing of, or otherwise using, any personal or

business assets that were derived or obtained from telemarketing-

related activities and/or payment processing-related activities, or

that are co-mingled with money or other assets derived or obtained

Page 4 of 6

from telemarketing-related activities and/or payment processing-related activities;

(viii)   opening or attempting to open safe-deposit boxes and/or safes into which proceeds of telemarketing-related activities and/or payment processing-related activities have deposited, transferred or placed;

(ix)    concealing from plaintiff any assets;

(x)     defendants and relief defendants shall disclose to plaintiff within two (2) days of the service of this injunctive order the identity of all banks, brokerage houses and/or other financial institutions, and respective account numbers, and the location of all safe-deposit boxes and/or safes, into which proceeds of telemarketing-related activities and/or payment processing-related activities have been deposited, transferred or placed; and

(xi)    destroying or otherwise discarding any records (including electronically-stored information) relating to the business of Payment Processing Center, LLC, and any business activity related to telemarketing and/or payment processing.

**IT IS FURTHER ORDERED** that a status conference shall be held on the 24th day of February 24, 2006, at 10:00 a.m., in Courtroom 17-B.  All parties, or their respective counsel, must attend.  A hearing will be held on February 27, 2006, at 10:00 a.m., in Courtroom 17-B.

**IT IS FURTHER ORDERED** that plaintiff shall serve a copy of this order, the Verified Complaint for Injunctive Relief, and the motion for a restraining order and supporting

memorandum of law, upon each defendant and relief defendant, by hand delivery upon the

person, or otherwise pursuant to Rule 4(e), Fed.R.Civ.P.

BY THE COURT:

HONORABLE JOHN R. PADOVA
Judge, United States District Court

2-22-06
copies to
Sweet, AUSA

Tab 3

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 4614996 (D.Minn.)
**(Cite as: 2008 WL 4614996 (D.Minn.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
UNITED STATES of America, Plaintiff,
v.
1. Thomas Joseph PETTERS; Petters Company Inc.,
PCI; Petters Group Worldwide, LLC; 2. Deanna
Coleman aka Deanna Munson; 3. Robert White; 4.
James Wehmhoff; 5. Larry Reynolds dba Nationwide
International Resources aka NIR; 6. Michael Catain
dba Enchanted Family Buying Company; 7. Frank E.
Vennes Jr. dba Metro Gem Finance, Metro Gem Inc.,
Grace Offerings of Florida LLC, Metro Property Fi-
nancing, LLC, 38 E. Robinson, LLC, 55 E. Pine,
LLC, Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC, Corner-
stone Rental Pool, LLC, 2 South Orange Avenue,
LLC, Hope Commons, LLC, Metro Gold, Inc.; De-
fendants.
**Civil No. 08-SC-5348 (ADM/JSM).**
**No. 08-SC-5348 (ADM/JSM).**

Oct. 6, 2008.

Gregory G. Brooker, Robyn A. Millenacker, David
W. Fuller, United States Attorney's Office, MPLS,
MN, for Plaintiff.

Eric J. Riensche, Jon M. Hopeman, Donald G. Hee-
man, Felhaber, Larson, Fenlon & Vogt, PA, Allan H.
Caplan, Ryan P. Garry, Caplan Law Firm, P.A., Jo-
seph S. Friedberg, Joseph S. Friedberg, Chartered,
Andrew M. Luger, David J. Wallace-Jackson, Greene
Espel, Frederic K. Bruno, Bruno & Associates, Mi-
chael J. Colich, Colich & Associates, James L. Vol-
ling, Jesseca R.F. Cockson, Faegre & Benson, LLP,
MPLS, MN, for Defendants.

***ORDER FOR ENTRY OF PRELIMINARY IN-
JUNCTION, ORDER APPOINTING RECEIVER,
AND OTHER EQUITABLE RELIEF***

ANN D. MONTGOMERY, District Judge.

**\*1** Pursuant to 18 U.S.C. § 1345 and Federal Rule of
Civil Procedure 65, Plaintiff United States of Ameri-
ca ("United States") filed a Complaint for Permanent
Injunction and Other Equitable Relief and moved for
a *ex parte* Temporary Restraining Order ("TRO"),
Preliminary Injunction, and Other Equitable Relief.
On October 3, 2008, the Court issued an *ex parte*
TRO and an Order to Show Cause why a Preliminary
Injunction should not be issued. An Amended Com-
plaint was filed on October 6, 2008. A Stipulation
was also filed on October 6, 2008, seeking that this
Order for Entry of Preliminary Injunction, Order Ap-
pointing Receiver, and Other Equitable Relief be
entered.

### *FINDINGS OF FACT*

Based upon the Stipulation, and all the files, records,
and proceedings in this matter, the Court makes the
following Findings of Fact:

1. The Court has jurisdiction over the subject matter
of this case and jurisdiction over the parties.

2. Venue lies properly with the Court.

3. Defendants have received the United States' Com-
plaint for Permanent Injunction and Other Equitable
Relief, dated October 2, 2008, and the Court's *ex
parte* Temporary Restraining Order, dated October 3,
2008.

4. There is probable cause to believe that certain De-
fendants have committed and were continuing to
commit, prior to the Court's Temporary Restraining
Order of October 3, 2008, mail fraud, wire fraud, and
banking fraud in violation of Title 18 of the United
States Code.

5. There is probable cause to believe that the amount
traceable to certain of the Defendants' fraudulent ac-
tivities is at this time $3 billion.

6. There is probable cause to believe that immediate
and irreparable narm will result from certain of the
Defendants' ongoing violations of federal mail, wire,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4614996 (D.Minn.)
 **(Cite as: 2008 WL 4614996 (D.Minn.))**

and banking fraud laws, absent entry of this Preliminary Injunction and Order.

7. The United States is likely to succeed on the merits of its Amended Complaint for Permanent Injunction and Other Equitable Relief.

8. Weighing the equities and considering the United States' likelihood of success in its cause of action, this Preliminary Injunction and Order is in the public interest.

9. No security is required of the United States for issuance of a Preliminary Injunction, pursuant to Federal Rule of Civil Procedure 65(c).

### I. ASSET FREEZE

IT IS THEREFORE ORDERED that Defendants PETTERS COMPANY, INC.; PETTERS GROUP WORLDWIDE, LLC; and any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by the foregoing but excluding: THOMAS PETTERS, INC., and its subsidiaries including but not limited to: MN AIRLINES, LLC, dba SUN COUNTRY AIRLINES (hereinafter referred to as the "Entities"); their agents; including financial and banking institutions and other entities having possession or control of the Entities' assets; their officers; their employees; and all persons in active concert or participating with the Entities in their affairs are hereby restrained and enjoined:

**\*2** A. from withdrawing or transferring up to and including $3 billion that is on deposit with or held on the Entities' behalf by any financial or banking institution, trust fund, brokerage agency, or other financial agency, public or private, unless specifically authorized by Order of this Court;

B. from transferring, selling, assigning, dissipating, concealing, encumbering, impairing, or otherwise disposing of, in any manner, assets in real or personal property, owned, gained, or acquired by the Entities up to and including $3 billion, unless specifically authorized by Order of this Court; and

C. from opening or causing to be opened any safe deposit boxes or storage facilities titled in the name

of the Entities, or subject to access by the Entities or under their control, without providing the United States prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Preliminary Injunction, unless specifically authorized by Order of this Court.

IT IS FURTHER ORDERED that all assets, including bank accounts, of the Entities are deemed to be property of the Receivership and subject to the exclusive administration by the Receiver, as detailed in this Preliminary Injunction and Order.

### II. DUTIES OF THIRD PARTIES HOLDING THE ENTITIES' ASSETS, INCLUDING FINANCIAL INSTITUTIONS

IT IS FURTHER ORDERED that any financial or brokerage institution, bank, business entity, or person having possession, custody, or control of any account, safe deposit box, or other asset of any of the Entities shall:

A. Hold and retain within its control and prohibit the transfer, encumbrance, pledge, assignment, removal, withdrawal, dissipation, sale, or other disposal of any such account or other asset, except:

1. for transfers or withdrawals directed by the Receiver for those assets over which the Receiver has control pursuant to this Order or any Order of this Court; or

2. by further Order of this Court;

B. Deny access to any safe deposit box titled in the name of the Entities or otherwise subject to access by the Entities;

C. Provide to the Receiver, appointed herein, with ten (10) business days of notice of this Preliminary Injunction and Order, a statement setting forth:

1. The identification of each account or asset titled in the name of any and all Entities;

2. The balance of each account or a description of the nature and value of each asset under the name of any and all Entities as hereinafter defined; and

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4614996 (D.Minn.)
 **(Cite as: 2008 WL 4614996 (D.Minn.))**

3. The identification of any safe deposit box or storage facility that is either titled in the name of or subject to access by each of the Entities.

D. Allow the Receiver immediate access to inspect or copy any records or other documentation pertaining to such account or asset owned or controlled by each of the Entities, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial institution, account custodian, or other aforementioned entity may arrange for the Receiver to obtain copies of any such records which the Receiver seeks, provided that such institution or custodian may charge a reasonable fee not to exceed twenty five (25) cents per page copied;

**\*3** E. At the direction of the Receiver, and without further order of this Court, convert any stocks, bonds, options, mutual funds, or other securities owned by each of the Entities; and

F. Cooperate with all reasonable requests of the Receiver relating to implementation of this Preliminary Injunction and Order, including transferring funds at the Receiver's direction and producing records related to all accounts owned by each of the Entities.

### III. RECORDKEEPING AND BUSINESS OPERATIONS

IT IS THEREFORE ORDERED that the Entities; their agents, including financial and banking institutions and other entities having possession or control of the Entities' assets; their officers; their employees; and all persons in active concert or participating with the Entities in their affairs are hereby restrained and enjoined from:

A. failing to maintain all business, corporate, foundation, banking, financial, and/or accounting records in their possession that could be material to this cause of action;

B. altering any business, corporate, foundation, bank-

ing, financial, and/or accounting records in their possession that could be material to this cause of action; and

C. disposing of any business, corporate, foundation, banking, financial, and/or accounting records in their possession that could be material to this cause of action.

### IV. RECEIVERSHIP

A. APPOINTMENT OF A RECEIVER

IT IS FURTHER ORDERED that Douglas A. Kelley is appointed Receiver for the Entities with the full power of an equity Receiver. The Receiver shall solely be the agent of this Court in acting as Receiver under this Order and shall have judicial immunity. The Receiver shall be accountable directly to this Court, and shall comply with any local rules of this Court governing receivers, as well as the Federal Rules of Civil Procedure.

B. RECEIVERSHIP POWERS AND DUTIES

IT IS FURTHER ORDERED that the Receiver is directed and authorized and given all necessary powers to accomplish the following:

1. Assume full and exclusive control of the operations of the Entities removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of the Entities from control of, management of, or participation in, the business affairs of each of the Entities;

2. Take exclusive immediate custody, control, and possession of all the property, assets, and estate belonging to or in the possession, custody, or under the control of the Entities, wherever situated, except those assets seized by the United States pursuant to valid orders of a court. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets of the Entities and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Entities; PROVIDED, HOWEVER, the Receiver

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4614996 (D.Minn.)
 **(Cite as: 2008 WL 4614996 (D.Minn.))**

shall not attempt to collect any amount from a person if the Receiver believes the person was a victim of the mail, wire, or bank fraud scheme alleged in the Amended Complaint in this matter;

**\*4** 3. Take all steps necessary or desirable to secure the business premises of the Entities. Such steps may include, but are not limited to, the following as the Receiver deems necessary or advisable: (a) completing a written inventory of all assets; (b) obtaining pertinent information from all employees and other agents and all accrued and unpaid commissions and compensation of each such employee or agent; (c) videotaping all portions of the above-referenced business locations; (d) securing the above-referenced business locations by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at the locations;

4. Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Entities, including but not limited to obtaining an accounting of the assets, preventing transfer, withdrawal, or misapplication of assets and including but not limited to filing any bankruptcy petitions for any of the Entities to protect and preserve the assets of any of the Entities and acting as management or Debtor in Possession of any of the Entities so filed by the Receiver, and to appear and be heard in any bankruptcy of any of the Entities not filed by the Receiver;

5. Manage, administer, and conduct the operations of the Entities, until further Order of this Court, by performing all incidental acts that the Receiver deems to be advisable or necessary;

6. Choose, engage, and employ attorneys, accountants, appraisers, property managers, and other independent contractors and technical specialists or other professionals, with regard to the operations of the Entities, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Preliminary Injunction and Order;

7. Defend, compromise, or settle legal actions where-

in the Receiver or any of the Entities is a party commenced prior to or subsequent to this Order with the authorization of this Court. The Receiver may waive any attorney-client privilege held by any of the Entities.

8. Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of or exercising the authority granted by this Preliminary Injunction and Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Entities, prior to the date of entry of this Preliminary Injunction and Order, except payments that the Receiver deems necessary or advisable to secure assets or operations of each cf the Entities, including but not limited to rental payments, employee wages, critical vendors, etc.;

9. Maintain accurate records of all receipts and expenditures that the Receiver makes as the Receiver under this Order; and

**\*5** 10. The Receiver shall have the power and authority to perform any other act necessary or desirable to accomplish any of the foregoing.

E. COMPENSATION OF RECEIVER

IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Preliminary Injunction and Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Entities. The Receiver shall file with the Court and serve on the Entities, periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Preliminary Injunction and Order. Neither the Receiver nor his professionals shall increase the hourly rates used as the bases for such fee applications without twenty (20) days prior notice filed with the Court.

F. RECEIVER'S BOND

IT IS FURTHER ORDERED that the Receiver shall

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4614996 (D.Minn.)
 **(Cite as: 2008 WL 4614996 (D.Minn.))**

file with the Clerk of this Court a bond in the sum of $100,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court direction.

### *V. JURISDICTION*

IT IS FURTHER ORDERED:

(1) The Court shall retain exclusive jurisdiction of this matter for all purposes; and

(2) Civil discovery during the pendency of this Preliminary Injunction is stayed.

SO ORDERED.

D.Minn.,2008.
U.S. v. Petters
Not Reported in F.Supp.2d, 2008 WL 4614996 (D.Minn.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tab 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Civil No. 08-5348 AOM/JSM

UNITED STATES OF AMERICA,                    )
                                             )
                Plaintiff,                   )
                                             )
v.                                           )
                                             )
1.  THOMAS JOSEPH PETTERS dba                )
    PETTERS COMPANY INC.,                    )
    PCI;                                      )
2.  DEANNA COLEMAN aka DEANNA MUNSON;        )
3.  ROBERT WHITE;                            )
4.  JAMES WEHMHOFF;                          )
5.  LARRY REYNOLDS dba                        )
    NATIONWIDE INTERNATIONAL RESOURCES       )
    aka NIR;                                  )
6.  MICHAEL CATAIN dba                        )
    ENCHANTED FAMILY BUYING COMPANY;         )
7.  FRANK E. VENNES JR. dba                   )
    METRO GEM FINANCE,                        )
    METRO GEM INC.,                           )
    GRACE OFFERINGS OF FLORIDA LLC,          )
    METRO PROPERTY FINANCING, LLC,           )
    38 E. ROBINSON, LLC,                      )
    55 E. PINE, LLC,                          )
    ORLANDO RENTAL POOL, LLC,                 )
    100 PINE STREET PROPERTY, LLC,            )
    ORANGE STREET TOWER, LLC,                 )
    CORNERSTONE RENTAL POOL, LLC,            )
    2 SOUTH ORANGE AVENUE, LLC,               )
    HOPE COMMONS, LLC,                        )
    METRO GOLD, INC.;                         )
                                             )
                Defendants.                  )

## FILED UNDER SEAL

## TEMPORARY RESTRAINING ORDER

Pursuant to 18 U.S.C. § 1345 and Federal Rule of Civil

Procedure 65, Plaintiff United States of America ("United

States") filed a Complaint for Permanent Injunction and Other



FILED 10/3/08
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Equitable Relief and moved *ex parte* for a Temporary
Restraining Order.

### Findings of Fact

The Court has considered the United States's Complaint
for Permanent Injunctive and Other Equitable Relief; the
Motion for an *Ex Parte* Temporary Restraining Order and Other
Equitable Relief; the Memorandum of Law filed in support
thereof; the Affidavit of FBI Special Agent Eileen M. Rice;
and all other papers filed herein, and it appears to the
satisfaction of the Court that:

(1) The Court has jurisdiction over the subject matter
of this case, and there is good cause to believe that the
Court has jurisdiction over the parties;

(2) Venue lies properly with the Court;

(3) There is probable cause to believe that Defendants
have conspired to commit and/or committed federal mail, wire,
and/or banking fraud offenses within the meaning of Title 18
of the United States Code and that at least two financial
institutions were affected by the scheme to defraud;

(4) There is probable cause to believe that immediate and
irreparable harm will result from the dissipation of
Defendants's assets absent entry of this Temporary Restraining
Order and that, absent entry of this Temporary Restraining

2

Order, assets will not be available for restitution to victims and/or forfeiture;

(5) There is probable cause to believe that the amount traceable to Defendants's fraudulent conspiracy is at least $3 billion;

(6) Pursuant to Federal Rule of Civil Procedure 65(b), there is good cause for issuing this Temporary Restraining Order without prior notice to Defendants;

(7) Weighing the equities and considering the United States's likelihood of success in its cause of action, this Temporary Restraining Order is in the public interest; and

(8) Pursuant to Federal Rule of Civil Procedure 65(c), no security is required of the United States for issuance of this Temporary Restraining Order.

IT IS THEREFORE ORDERED that Defendants; their agents, including financial and banking institutions and other entities having possession or control of Defendants's assets; their officers; all persons in active concert or participating with Defendants in their affairs; and their employees are hereby temporarily restrained and enjoined:

(1) from transferring, converting, encumbering, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, or otherwise disposing of any funds, property, artwork, coins, precious metals, jewelry, contracts, share of

3

stock, or other assets, wherever located, that are: (a) owned or controlled by Defendants, in whole or in part; or (b) in the actual or constructive possession of Defendants; or (c) owned, controlled by, or in the actual or constructive possession of any entity that is directly or indirectly owned, managed, controlled by, or under common control with Defendants, including but not limited to any assets up to and including $3 billion held by or for Defendants in any account at any bank or savings and loan institution or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution of any kind;

(2) from opening or causing to be opened any safe deposit boxes or storage facilities titled in the name of Defendants, or subject to access by Defendants or under their control, without providing the United States prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Temporary Restraining Order.

IT IS FURTHER ORDERED THAT the Defendants provide to the United States the following within seven (7) business days after the date of service of this Temporary Restraining Order on them:

4

(1) a list of all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, trust funds, or other financial institutions at which Defendants currently maintain or have maintained savings, checking, investment, brokerage, or other accounts in the previous four (4) years.

IT IS FURTHER ORDERED THAT nothing in this Temporary Restraining Order shall be construed to restrain the assets of Polaroid Corporation and its subsidiaries, Polaroid Holding Company and its subsidiaries, Zink Imaging, Inc., Zink Imaging, LLC, MN Airlines LLC dba Sun Country Airlines, Petters Aviation, LLC, MN Airline Holdings, Inc., Petters Aircraft Leasing, LLC, and/or Southwest Aviation, Inc.

IT IS FURTHER ORDERED THAT, pursuant to Federal Rule of Civil Procedure 65(b), Defendants shall appear before the Court on ___10/10/08___ at ___10:00___ a.m., at the United States Courthouse located at ___13W U.S. Courthouse, Minneapolis, MN___, to show cause, if there be any, why the Court should not enter a Preliminary Injunction, pending final ruling on the Complaint against Defendants continuing the freeze of assets

up to and including $3 billion and imposing such additional
relief as may be appropriate.

IT IS SO ORDERED.

Dated: *3 October 2008*

_____
UNITED STATES DISTRICT COURT JUDGE
ANN D. MONTGOMERY

6

Tab 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Civil No. 05-SC-895 (MJD/JGL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | ORDER FOR ENTRY OF |
| v. | ) | PRELIMINARY INJUNCTION, |
| | | ORDER APPOINTING |
| | ) | RECEIVER, AND OTHER |
| 1.   CHRISTOPHER WILLIAM SMITH, | ) | EQUITABLE RELIEF |
| a/k/a BRUCE JONSON, CHRIS | ) | |
| JOHNSON AND ROBERT JONSON | ) | |
| 2.   ONLINE PAYMENT SOLUTIONS, | ) | |
| 3.   XPRESS PHARMACY DIRECT, | ) | |
| 4.   ALTON SCOTT POE, | ) | |
| a/k/a SCOTT POE, | ) | |
| 5.   ADVANCED FINANCIAL SVCS | ) | |
| INC., | ) | |
| 6.   ANITA SMITH, | ) | |
| 7.   ULTIMATE LIMOUSINE, | ) | |
| 8.   SAME DAY PAY DAY, | ) | |
| 9.   RIZLER, | ) | |
| 10.  RIZLERNET, | ) | |
| 11.  ADVISTECH S.A., | ) | |
| 12.  XPRESS-RX.COM, | ) | |
| 13.  DISCOUNT PHARMACY, | ) | |
| 14.  GLOBAL PAY WORLDWIDE, | ) | |
| 15.  VIGREX DS LLC, | ) | |
| 16.  SCOTT SMITH, and | ) | |
| 17.  DIAPER DECK & COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to 18 U.S.C. § 1345 and Federal Rule of Civil Procedure 65, Plaintiff United States of America ("United States") filed on May 9, 2005, a Complaint for Permanent Injunction and Other Equitable Relief and moved for a *ex parte* Temporary Restraining Order ("TRO"), Preliminary Injunction, and Other Equitable Relief.  On May 9, 2005, the Court issued a Temporary Restraining Order against Defendants.

On May 13, 2005, the United States moved for the appointment of a Receiver pursuant to 18 U.S.C. § 1345.  The Court held a hearing on May 20, 2005, on its Order to Show Cause why a Preliminary Injunction should not be issued against Defendants and on the United States' Motion for the Appointment of a Receiver.

<u>FINDINGS OF FACT</u>

Based upon the motion of the United States, and all the files, records, and proceedings in this matter, the Court makes the following Findings of Fact:

1.   The Court has jurisdiction over the subject matter of this case and jurisdiction over the parties.

2.   Venue lies properly with the Court.

3.   Defendants were served with the United States' Complaint for Permanent Injunction and Other Equitable Relief and the Court's Temporary Restraining Order, dated May 9, 2004.

4.   There is probable cause to believe that Defendants have committed and continue to commit federal mail and wire fraud offenses within the meaning of 18 U.S.C. §§ 1341 & 1343.

5.   There is probable cause to believe that the amount traceable to Defendants' fraudulent activities is $18 million.

6.   There is probable cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of federal mail and wire fraud laws absent entry of this Preliminary

2

Injunction and Order.

7.   The United States is likely to succeed on the merits of its Complaint for Permanent Injunction and Other Equitable Relief.

8.   Weighing the equities and considering the United States' likelihood of success in its cause of action, this Preliminary Injunction and Order is in the public interest.

9.   No security is required of the United States for issuance of a Preliminary Injunction, pursuant to Federal Rule of Civil Procedure 65(c).

## I.   PROHIBITED BUSINESS ACTIVITIES

IT IS THEREFORE ORDERED that all Defendants; their agents; their officers; their employees; and all persons in active concert or participating with Defendants in their affairs are hereby temporarily restrained and enjoined:

A.   from continuing to perpetrate their fraudulent scheme of operating a business that purports to sell or provide prescription drugs to the public in violation of 18 U.S.C. §§ 1341 & 1343; and

B.   from continuing to operate or control any website that purports to sell or provide prescription drugs to the public under any name or title in violation of 18 U.S.C. §§ 1341 & 1343, including: xpress-rx.com; rxorderfill.com; supremeproductsltd.com; yourrxnetwork.com; digihealthcorp.com; digihealthcorp.net; 4receiverx.com; receiverx.com; licensedrx.com;

3

mypillsrefills.com; samedaypayday.com; and netmeds.com.

## II. ASSET FREEZE

IT IS FURTHER ORDERED that all Defendants; their agents, including financial and banking institutions and other entities having possession or control of Defendants' assets; their officers; their employees; and all persons in active concert or participating with Defendants in their affairs are hereby temporarily restrained and enjoined:

A.   from withdrawing or transferring up to and including $18,000,000.00 that is on deposit with or held on Defendants' behalf by any financial or banking institution, trust fund, brokerage agency, or other financial agency, public or private;  B.   from transferring, selling, assigning, dissipating, concealing, encumbering, impairing, or otherwise disposing of, in any manner, assets in real or personal property, owned, gained, or acquired by Defendants up to and including $18,000,000.00; and

C.   from opening or causing to be opened any safe deposit boxes or storage facilities titled in the name of Defendants, or subject to access by Defendants or under their control, without providing the United States prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Preliminary Injunction.

Assets of all named Defendants except: (1) Christopher Smith

4

a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., frozen pursuant to this Preliminary Injunction are deemed to be property of the Receivership, subject to administration by the Receiver, as detailed in this Preliminary Injunction and Order.

The assets frozen by this Preliminary Injunction shall include both existing assets and assets acquired after the effective date of this Order except as specifically detailed below.

<u>Allowable Expenses</u>

With regard to Defendants Christopher Smith (a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson) and Anita Smith any and all assets held in their names, either individually or jointly, or controlled by either one of them or by both of them, whether existing on or acquired after the effective date of this Order, are hereby frozen and Defendants Christopher Smith (a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson) and Anita Smith are hereby prohibited from dissipating, disposing of, or expending any of these assets, with the exception of: (1) a previously established attorney trust account created to pay attorney fees associated with pending litigation in the Eastern District of Virginia, provided no new funds are allowed to be deposited into the account; (2) wages earned and income derived from employment or personal services or gifts received by them from

this date forward from which Defendants Christopher Smith (a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson) and Anita Smith are authorized to pay only reasonable, usual, ordinary and necessary living expenses up to the amount of $7,500 per month which shall include payment of the mortgage and insurance on their home in Burnsville, which is subject to this Court's asset freeze. With regard to subparts (1) and (2) of this paragraph, there is no prejudice for either party to later make application to the Court for modification to the terms of this paragraph. Counsel for Defendants Christopher and Anita Smith are to report regarding specific funds to be spent on legitimate business activities. Within three business days of receipt by the government, the government must object and bring a motion before the Court or the funds may be spent. At the end of every thirty day cycle, commencing with the entry of this Order, counsel for Defendants Christopher Smith and Anita Smith shall report to the United States regarding the amount of wages and gifts received by the Defendants and shall disclose an itemization of the funds expended. Within three business days of receipt of the itemization by the government, the government has the right to object and bring a motion before the Court.

With regard to Defendant Scott Smith, any and all assets held in his name, either individually or jointly, or controlled by him, whether existing on or acquired after the effective date of this

Order, are hereby frozen and Defendant Scott Smith is hereby prohibited from dissipating, disposing of, or expending any of these assets, with the exception of: (1) wages earned and income derived exclusively from Defendant Diaper Deck & Company, Inc.

With regard to Defendant Diaper Deck & Company, Inc., any and all assets held in its name, either individually or jointly, or controlled by it, whether existing on or acquired after the effective date of this Order, are hereby frozen and Defendant Diaper Deck & Company, Inc., is hereby prohibited from dissipating, disposing of, or expending any of these assets, with the exception of: (1) a previously established bank account held in the name of Diaper Deck & Company at Victoria Bank, to be used exclusively by Diaper Deck & Company to conduct its business of the manufacture, sale, and distribution of baby-changing stations. Diaper Deck & Company, Inc., may acquire business income and pay related and legitimate business expenses.

### III.  DUTIES OF THIRD PARTIES HOLDING DEFENDANTS'  ASSETS, INCLUDING FINANCIAL INSTITUTIONS

IT IS FURTHER ORDERED that any financial or brokerage institution, business entity, or person having possession, custody, or control of any records of Defendants, or of any account, safe deposit box, or other asset titled in the name of either Defendant, or that has maintained any such account, safe deposit box, or other asset shall:

A.   Hold and retain within its control and prohibit the transfer, encumbrance, pledge, assignment, removal, withdrawal, dissipation, sale, or other disposal of any such account or other asset, except:

1.   for transfers or withdrawals directed by the Receiver for those assets over which the Receiver has control pursuant to this Order or any Order of this Court; or

2.   by further order of this Court;

B.   Deny access to any safe deposit box titled in the name of Defendants or otherwise subject to access by Defendants;

C.   Provide to the Receiver, with ten (10) business days of notice of this Preliminary Injunction and Order, a sworn statement setting forth:

1.   The identification of each account or asset titled in the name of all named Defendants except:  (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., or held on behalf of, or for the benefit of, all named Defendants except:  (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper

8

Deck & Company, Inc.

2.   The balance of each account or a description of the
nature and value of each asset under the name of all
named Defendants except: (1) Christopher Smith a/k/a
Bruce Jonson, Chris Jonson, and Robert Jonson; (2)
Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4)
Scott Smith; and (5) Diaper Deck & Company, Inc., as
of the close of business on the day this Order is
served, and, if the account or asset has been closed
or moved, the date closed or removed, the total funds
removed in order to close the account, and the person
or entity to whom such account or other asset was
remitted; and

3.   The identification of any safe deposit box or storage
facility that is either titled in the name of or
subject to access by each named Defendant except:
(1) Christopher Smith a/k/a Bruce Jonson, Chris
Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a
Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5)
Diaper Deck & Company, Inc.

D.   Allow the Receiver immediate access to inspect or copy any
records or other documentation pertaining to such account or asset
owned or controlled by each named Defendant except: (1) Christopher

Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial institution, account custodian, or other aforementioned entity may arrange for the Receiver to obtain copies of any such records which the Receiver seeks, provided that such institution or custodian may charge a reasonable fee not to exceed fourteen (14) cents per page copied;

E.    At the direction of the Receiver, and without further order of this Court, convert any stocks, bonds, options, mutual funds, or other securities owned by each named Defendant except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., to their cash equivalents; and

F.    Cooperate with all reasonable requests of the Receiver relating to implementation of this Preliminary Injunction and Order, including transferring funds at the Receiver's direction and producing records related to all accounts owned by each named

10

Defendant except:  (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc.

G.   The assets and funds affected by this Preliminary Injunction and Order shall include both existing assets and assets acquired after the effective date of this Order.

<u>IV.  RECORDKEEPING AND BUSINESS OPERATIONS</u>

IT IS THEREFORE ORDERED that Defendants; their agents, including financial and banking institutions and other entities having possession or control of Defendants' assets; their officers; their employees; and all persons in active concert or participating with Defendants in their affairs are hereby restrained and enjoined from:

A.   failing to maintain all business, corporate, foundation, banking, financial, and/or accounting records in their possession that could be material to this cause of action;

B.   altering any business, corporate, foundation, banking, financial, and/or  accounting records in their possession that could be material to this cause of action;

C.   disposing of any business, corporate, foundation, banking, financial, and/or accounting records in their possession that could be material to this cause of action; and

11

<u>V.   RECEIVERSHIP</u>

A.   APPOINTMENT OF A TEMPORARY RECEIVER

IT IS FURTHER ORDERED that Andrew Luger is appointed Receiver for the business activities of each named Defendant except:  (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., and any affiliates, subsidiaries, divisions, sales, entities, successors, or assigns, with the full power of an equity Receiver.  The Receiver shall solely be the agent of this Court in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court, and shall comply with any local rules of this Court governing receivers, as well as the Federal Rules of Civil Procedure.

B.   RECEIVERSHIP DUTIES

IT IS FURTHER ORDERED that the Receiver is directed and authorized to accomplish the following:

    1.   Assume full control of the business operations of each named Defendant except:  (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson;   ( 2 ) Alton Scott Poe a/k/a Scott Poe; (3) Anita   Smith; (4) Scott Smith; and (5) Diaper Deck &   Company, Inc., removing, as the Receiver deems   n e c e s s a r y   o r advisable, any director, officer,

12

independent-contractor, employee, or agent of either Defendant from control of, management of, or participation in, the business affairs of each named Defendant except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc.;

2. Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, each named Defendant except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., wherever situated, except those assets seized by the United States pursuant to valid orders of a court. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the each named Defendant except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., and other

persons or entities whose interests are now held by or under the direction, possession, custody, or control of each named Defendants except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., PROVIDED, HOWEVER, the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the mail and/or wire fraud scheme alleged in the Complaint in this matter;

3. Take all steps necessary to secure the business premises of each named Defendant except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc.. Such steps may include, but are not limited to, the following as the Receiver deems necessary or advisable: (a) completing a written inventory of all assets; (b) obtaining pertinent information from all employees and other agents and all accrued and unpaid commissions and compensation of each such employee or agent; (c)

14

videotaping all portions of the above-referenced locations; (d) securing the above-referenced locations by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at the locations;

4.   Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of each named Defendant except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

5.   Manage and administer the business of each named Defendant except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., until

15

further order of this Court by performing all
incidental acts that the Receiver deems to be
advisable or necessary;

6. Choose, engage, and employ attorneys, accountants,
appraisers, and other independent contractors and
technical specialists, with regard to each named
Defendant except: (1) Christopher Smith a/k/a Bruce
Jonson, Chris Jonson, and Robert Jonson; (2) Alton
Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott
Smith; and (5) Diaper Deck & Company, Inc., as the
Receiver deems advisable or necessary in the
performance of duties and responsibilities under the
authority granted by this Preliminary Injunction and
Order;

7. Make payments and disbursements from the receivership
estate that are necessary or advisable for carrying
out the directions of or exercising the authority
granted by this Preliminary Injunction and Order.
The Receiver shall apply to the Court for prior
approval of any payment of any debt or obligation
incurred by each named Defendants except: (1)
Christopher Smith a/k/a Bruce Jonson, Chris Jonson,
and Robert Jonson; (2) Alton Scott Poe a/k/a Scott

16

Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., prior to the date of entry of this Preliminary Injunction and Order, except payments that the Receiver deems necessary or advisable to secure assets of each named Defendant except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., such as rental payments;

8. Communicate with, and respond to communications from, customers;

9. Maintain accurate records of all receipts and expenditures that the Receiver makes as the Receiver under this Order; and

10. Wind down and close any operation of any named Defendant except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., that purports to sell or provide prescription drugs to the public in violation of 18 U.S.C. §§ 1341 & 1343 or otherwise violates 18 U.S.C. §§ 1341 & 1343.

17

C.  COOPERATION WITH THE RECEIVER

IT IS FURTHER ORDERED that Defendants and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns shall fully cooperate with and assist the Receiver.

D.  TRANSFER OF FUNDS TO THE RECEIVER

IT IS FURTHER ORDERED that, upon service of a copy of this Preliminary Injunction and Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the Receiver relating to implementation of this Preliminary Injunction and Order, including transferring funds at the Receiver's direction and producing records related to the assets of Defendants except:  (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc.

E.  COMPENSATION OF RECEIVER

IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Preliminary Injunction and

18

Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, Defendants except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc. The Receiver shall file with the Court and serve on the named Defendants except: (1) Christopher Smith a/k/a Bruce Jonson, Chris Jonson, and Robert Jonson; (2) Alton Scott Poe a/k/a Scott Poe; (3) Anita Smith; (4) Scott Smith; and (5) Diaper Deck & Company, Inc., periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Preliminary Injunction and Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

F. RECEIVER'S BOND

IT IS FURTHER ORDERED that the Receiver shall file with the Clerk of this Court a bond in the sum of $1,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court direction.

G. DEFENDANT DIAPER DECK NOT SUBJECT TO RECEIVERSHIP

Defendant Diaper Deck and its business, which includes the manufacture, sale, and distribution of baby-changing stations, is

not subject to the provisions of this Order relating to Receivership.

### VI. JURISDICTION

IT IS FURTHER ORDERED:

(1)  the Court shall retain jurisdiction of this matter for all purposes.

(2)  Every sixty (60) days the United States shall prepare a status report to the Court regarding this Order; and

(3)  Civil discovery during the pendency of this Preliminary Injunction is stayed.

SO ORDERED, this 20th day of May, 2005.


S/ Michael J. Davis
Honorable Michael J. Davis
United States District Judge

Tab 6

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4988 | **DATE** | 8/16/2000 |
| **CASE TITLE** | USA vs. Krishnaswami Sriram, M.D. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Government's verified complaint for temporary restraining order is granted. Enter Temporary Restraining Order. The temporary restraining order will expire on 8/30/00 at 10:00 a.m., and a hearing on the United States's motion for preliminary injunction is set for 8/28/00 at 10:0 a.m. before Magistrate Judge Schenkier. This cause is set for status before Judge Aspen for 9/12/00 at 10:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| ✓ | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | 4 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| GL | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
)
Plaintiff, )        00 C 4988
v. )
)        Chief Judge Aspen
KRISHNASWAMI SRIRAM, M.D., )
)
Defendant. )

## TEMPORARY RESTRAINING ORDER

This matter came before the Court on consideration of the United States' Application for Temporary Restraining Order, Verified Complaint For Injunctive Relief, and Brief in support of Application for Temporary Restraining Order.

WHEREUPON THE COURT, having considered the matter and being duly advised in the premises now finds that a Temporary Restraining Order should, and hereby does ISSUE pursuant to 18 U.S.C. § 1345. The Court finds that the United States has shown probable cause to believe that the defendant are committing or about to commit a Federal health care offense and/or that the defendant is engaged in an ongoing scheme to defraud in violation of 18 U.S.C. § 287 (False Claims), 18 U.S.C. § 1347 (Health Care Fraud) and 31 U.S.C. § 3729 et seq. (False Claims Act).

The Court further finds that a continuing and substantial injury to the United States, absent a temporary restraining order issued without notice, is likely to occur and be defined as follows:

1. the continued commission of a Federal health care offense (18 U.S.C.
   § 1347);

2. the continued violation of 18 U.S.C. § 287, 42 U.S.C. § 1320 et seq.,

and 31 U.S.C. § 3729 et seq.

3.   the continued disposition and/or alienation of funds or assets obtained

as a result of the Federal health care offense or equivalent value of

funds resulting from their commission of a Federal health care fraud

offense.

The irreparable harm necessary is established in light of the statutory basis for the issuance

of a temporary restraining order under the showing made by the United States.   See 18 U.S.C.

§ 1345.

THEREFORE, at __10:0⁶__o'clock __A__.m., on this __16__ day of August , 2000, this Court issues a

Temporary Restraining Order enjoining and prohibiting:

(1)   the defendant from defrauding any health care benefit program and/or from obtaining,

by means of a false or fraudulent representation, any money under the custody or control of any

health care benefit program;

(2)   the defendant from accepting, transferring, alienating, encumbering and/or disposing

of, or otherwise taking any action with respect to monies received from the health care insurers,

Medicaid, Medicare, CHAMPUS, the United States or financial institutions as a result of his

fraudulent scheme;

(3)   financial institutions, brokers, agents, family members, and/or other entities having

possession or control of defendant's assets, from disposing of or transferring such assets from the

time of service on them of a copy this TEMPORARY RESTRAINING ORDER; In particular, the

following accounts at the following financial institutions are affected:

2

## LAKE FOREST BANK

| Account Number | Account Holder | Date Opened | Current Balance |
|---|---|---|---|
| 7000017538 | Krishnaswami Sriram Rajalakshmi Sriram | 1-22-1999 | $ 3,289,033.28 |
| 7200002895 | Krishnaswami Sriram d/b/a Family Physicians | 8-19-1996 | $20,674.63 |
| 7200008583 | Krishnaswami Sriram d/b/a Home Doctors | 9-18-1998 | $29,080.85 |

(4)    the defendant from failing to maintain business, financial, patient, and accounting records;

(5)    the defendant from disposing of business, financial, patient and accounting records or from altering in any way the same described records;

(6)    the defendant from withdrawing or transferring any money or sums presently deposited, or held on their behalf by any financial institution, trust fund, brokerage agency or other financial agency, public or private, including any custodial accounts in the names of minor children; except that the Defendants may petition the Court, and the Court may order, that the defendant may conduct normal, day-to-day business activities and pay for the same on a monthly basis, in an amount not to exceed that determined by the Court, provided, however, that the Defendant produce to the Court and the government a verified disclosure of all assets and liabilities; and

(7)    the defendant from transferring, selling, assigning, dissipating, concealing, encumbering, impairing, or otherwise disposing of, in any manner, assets in real or personal property, owned, gained or acquired by him, specifically two real properties located at 715 East Falcon, # 115, Arlington Heights, Illinois 60005 and 611 Hunter, Lake Forest, Illinois 60045.

3

This Temporary Restraining Order will expire at _10:00 a.m_ on the _30_ day of _August_, 2000 and

a hearing on the United States's Motion For Preliminary Injunction is set for the _28_ day of

_August_____, 2000 at _10:00 a.m_ o'clock before ~~this Court~~. Magistrate Judge Sidney Schenkier,

This Cause is set for status before this court at 10:00 a.m. or

September 12, 2000.

IT IS SO ORDERED.

_____
Marvin E. Aspen
United States District Judge

Copies to:      Krishnaswami Sriram
                611 Hunter Lane
                Lake Forest, Illinois 60045


                Lake Forest Bank
                Lake Forest, Illinois 60045